No. 14-2157

───────────────

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE FOURTH CIRCUIT

───────────────

WEST VIRGINIA CWP FUND, as carrier for PEN COAL CORPORATION,

*Petitioner*,

v.

KENNETH GREGORY, and

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

*Respondents*

───────────────

ON PETITION FOR REVIEW OF A DECISION AND ORDER
OF THE BENEFITS REVIEW BOARD
UNITED STATES DEPARTMENT OF LABOR

───────────────

**OPENING BRIEF OF PETITIONER,
WEST VIRGINIA CWP FUND
PUBLIC REDACTED VERSION**

───────────────

Jeffrey R. Soukup
Jackson Kelly PLLC
175 E. Main St., Ste. 500
Lexington, KY 40507
(304) 284-4100
jrsoukup@jacksonkelly.com
*Counsel for West Virginia CWP Fund*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No. 14-2157        Caption: West Virginia CWP Fund v. Kenneth Gregory

Pursuant to FRAP 26.1 and Local Rule 26.1,

West Virginia CWP Fund, who is Petitioner, makes the following disclosure:

1.      Is party/amicus a publicly held corporation or other publicly held entity?
            _____YES    X    NO

2.      Does party/amicus have any parent corporations?    X    YES    _____NO

            Pen Coal Corporation was a subsidiary of Pen Holdings, Inc., a
            Tennessee Corporation which was administratively dissolved in
            September 2004.

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held
        corporation or other publicly held entity?    _____YES    X    NO

            See Response to Question 2.  Pen Coal Corporation is named as a
            party to the proceedings pursuant to 20 C.FR. § 725.360(a), but it does
            not have any direct financial interest in this case because it is fully
            insured by the West Virginia CWP Fund, an entity of the State if West
            Virginia, for any federal black lung benefits which may be awarded to
            Mr. Gregory.

4.      Is there any other publicly held corporation or other publicly held entity that
        has a direct financial interest in the outcome of the litigation (Local Rule
        26.1(b))?
            _____YES    X    NO

5.      Is party a trade association?
            _____YES    X    NO

6.      Does this case arise out of a bankruptcy proceeding?
            _____YES    X    NO

/s/ Jeffrey R. Soukup                          December 15, 2014
Counsel for West Virginia CWP Fund

ii

**TABLE OF CONTENTS**

I.   STATEMENT OF SUBJECT MATTER AND
     APPELLATE JURISDICTION ................................................................1

II.  STATEMENT OF THE ISSUES ..............................................................2

     1.   Dr. Stark gave a conclusory diagnosis of "industrial
          chronic bronchitis" that was unsupported by any
          explanation or reasoning.  Did the agency fact-finder
          err as a matter of law in crediting the opinion as
          "well-reasoned"? ...............................................................................2

     2.   Drs. Tuteur and Crisalli found no medical basis to
          diagnose Mr. Gregory with legal pneumoconiosis.
          Did the agency fact-finder employ inconsistent and
          irrational reasoning for rejecting Dr. Tuteur's and
          Dr. Crisalli's opinions? .....................................................................2

     3.   Dr. Stark's diagnosis of "industrial chronic
          bronchitis" was the only medical opinion credited that
          supported finding totally disabling legal
          pneumoconiosis.  Since Dr. Stark's opinion is *per se*
          unreasoned, can Mr. Gregory still be found to be
          totally disabled due to legal pneumoconiosis? ................................2

III. STATEMENT OF THE CASE ....................................................................3

     A.   Procedural History ............................................................................3

     B.   Relevant Facts ...................................................................................4

IV.  SUMMARY OF ARGUMENT ................................................................11

V.   ARGUMENT .........................................................................................13

     A.   Standard of Review...........................................................................13

     B.   Discussion of Issues.........................................................................14

          1.   Dr. Stark's diagnosis of "industrial chronic
               bronchitis" is unsupported by any explanation
               or reasoning.  The agency fact-finder erred as a

**matter of law by crediting the opinion as "well-reasoned."** .................................................................14

2.   **The agency fact-finder employed inconsistent and irrational reasoning for rejecting Dr. Tuteur's and Dr. Crisalli's opinions that Mr. Gregory does not have legal pneumoconiosis.** ..................................................29

3.   **Dr. Stark's diagnosis of "industrial chronic bronchitis" was the only medical opinion credited that supported finding totally disabling legal pneumoconiosis. Since Dr. Stark's opinion is *per se* unreasoned, as a matter of law Mr. Gregory cannot be found to be totally disabled due to legal pneumoconiosis.** ...............................37

**VI.**   **CONCLUSION** ...........................................................................39

**VII.**   **REQUEST FOR ORAL ARGUMENT** ...................................40

**VIII.**   **ADDENDUM OF STATUTES, RULES, and REGULATIONS** ........................................................................41

**IX.**   **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)** ....................51

**X.**   **CERTIFICATE OF SERVICE**

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Allentown Mack Sales & Service, Inc. v. NLRB*,
 522 U.S. 359 (1998) ................................................................. 17

*Am. Tel. & Tel. Co. v. FCC*,
 974 F.2d 1351 (D.C. Cir. 1992) ............................................... 24

*Bailes v. W.V. CWP Fund*,
 BRB No. 13-0528 BLA (Ben. Rev. Bd. May 13, 2014) ........................33, 37

*Bill Branch Coal Corp. v. Sparks*,
 213 F.3d 186 (4th Cir. 2000)..................................................... 18

*Conley v. Nat'l Mines Corp.*,
 595 F.3d 297 (6th Cir. 2010)..................................................... 20

*Consol. Edison Co. of N.Y. v. NLRB*,
 305 U.S. 197 (1938)................................................................. 13

*Daubert v. Merrell Dow Pharm. Inc.*,
 509 U.S. 579 (1993)................................................................. 19

*Dehue Coal Co. v. Ballard*,
 65 F.3d 1189 (4th Cir. 1995)..................................................... 13

*Dickson v. Sec'y of Defense*,
 68 F.3d 1396 (D.C. Cir. 1995) ................................................. 21

*E. Assoc. Coal Corp. v. Director, OWCP*,
 220 F.3d 250 (4th Cir. 2000)..................................................... 15

*Fields v. Island Creek Coal Co.*,
 10 Black Lung Rep. (Juris.) 1-19 (Ben. Rev. Bd. 1987)............................ 18

*Freeman United Coal Mining Co. v. Stone*,
 957 F.2d 360 (7th Cir. 1992)........................................................22, 24, 35

ii

## TABLE OF AUTHORITIES, Continued

*Gen'l Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)................................................................ 19

*Greene v. King James Coal Mining, Inc.*,
    575 F.3d 628 (6th Cir. 2009)................................................ 33

*Gunderson v. U.S. Dep't of Labor*,
    601 F.3d 1013 (10th Cir. 2010)............................................ 33

*Hillibush v. Dep't of Labor*,
    853 F.2d 197 (3d Cir. 1988)................................................ 17

*Island Creek Coal Co. v. Compton*,
    211 F.3d 203 (4th Cir. 2000)................................................ 13

*Kopp v. Director, OWCP*,
    877 F.2d 307 (4th Cir. 1989) ................................................ 3

*Kozele v. Rochester & Pittsburgh Coal Co.*,
    6 Black Lung Rep. 1-378 (Juris.) (Ben. Rev. Bd. 1983)........................34, 37

*Milburn Colliery Co. v. Hicks*,
    138 F.3d 524 (4th Cir. 1998)................................................13, 18

*Motor Vehicles Mfrs. Ass'n of Am. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983).............................................................. 24

*N. Am. Coal Co. v. Miller*,
    870 F.2d 948 (3d Cir. 1989)................................................ 17

*Peabody Coal Co. v. Hale*,
    771 F.2d 246 (7th Cir. 1985)................................................ 17

*Peabody Coal Co. v. McCandless*,
    255 F.3d 465 (7th Cir. 2001)................................................ 20

*Sterling Smokeless Coal Co. v. Akers*,
    131 F.3d 438 (4th Cir. 1997)................................................ 13

## TABLE OF AUTHORITIES, Continued

*Tamraz v. Lincoln Elec. Co.*,
    620 F.3d 665 (6th Cir. 2010)...................................................................... 21

*Wright v. Director, OWCP*,
    7 Black Lung Rep. (Juris.) 1-475 (Ben. Rev. Bd. 1984)..................22, 24, 35

**Statutes**

Black Lung Benefits Act
    30 U.S.C. § 921(c)(3)....................................................................................15
    30 U.S.C. § 932 ......................................................................................1, 17

Longshore and Harbor Workers' Compensation Act
    33 U.S.C. § 919 ..............................................................................................17
    33 U.S.C. § 921(c) ...........................................................................................1

**Regulations**

Part 718: Standards for Determining Coal Miner's Total Disability or Death Due to Pneumoconiosis
    20 C.F.R. § 718.104 (2014)......................................................................25, 26
    20 C.F.R. § 718.2 (2014) ...............................................................................3
    20 C.F.R. § 718.201 (2014)...................................................................*passim*
    20 C.F.R. § 718.202 (2014)...................................................................*passim*
    20 C.F.R. § 718.204 (2014)...........................................................................32

Part 725:  Claims for Benefits Under Part C of Title IV of the Federal Coal Mine Safety and Health Act, as Amended
    20 C.F.R. § 725.2 (2014) ...............................................................................3
    20 C.F.R. § 725.477 (2014)...........................................................................17
    20 C.F.R. § 725.482(a) (2014) ......................................................................1

Part 802: Rules of Practice and Procedure
    20 C.F.R. § 802.407 ..................................................................................1, 4

iv

## I.    STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This matter involves an appeal from a final order of the United States Department of Labor Benefits Review Board (the "Board"). This Court has jurisdiction over an appeal from a final order of the Board under Section 21(c) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), as incorporated by § 422(a) of the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 932(a). The Board affirmed the April 30, 2013 award of federal black lung benefits to Kenneth Gregory by United States Department of Labor ("DOL") Administrative Law Judge ("ALJ") Peter B. Silvain, Jr. Joint Appendix ("JA") 73.

The jurisdictional time limit for filing an appeal from a final order of the Board is 60 days. *See* 33 U.S.C. § 921(c); 20 C.F.R. § 725.482(a) (2014). The Board issued its final order affirming the award of benefits to Mr. Gregory on April 25, 2014. JA 73. The West Virginia CWP Fund (the "Fund"), as carrier for Pen Coal Corporation, timely filed a motion for *en banc* reconsideration with the Board on May 23, 2014. *See* 20 C.F.R. § 802.407. The Board denied the Fund's motion for *en banc* reconsideration on August 28, 2014. JA 80. The Fund filed its appeal with this Court on Monday, October 27, 2014. JA 83. The injury alleged, within the meaning of Section 21(c) of the LHWCA, occurred in West Virginia. This Court has jurisdiction to review the Board's decision.

## II.   STATEMENT OF THE ISSUES

1.  **Dr. Stark gave a conclusory diagnosis of "industrial chronic bronchitis" that was unsupported by any explanation or reasoning.  Did the agency fact-finder err as a matter of law in crediting the opinion as "well-reasoned"?**

2.  **Drs. Tuteur and Crisalli found no medical basis to diagnose Mr. Gregory with legal pneumoconiosis.  Did the agency fact-finder employ inconsistent and irrational reasoning for rejecting Dr. Tuteur's and Dr. Crisalli's opinions?**

3.  **Dr. Stark's diagnosis of "industrial chronic bronchitis" was the only medical opinion credited that supported finding totally disabling legal pneumoconiosis.  Since Dr. Stark's opinion is *per se* unreasoned, can Mr. Gregory still be found to be totally disabled due to legal pneumoconiosis?**

2

# III.   STATEMENT OF THE CASE

## A.   Procedural History

The case concerns Mr. Kenneth Gregory's third claim for federal black lung benefits,[1] filed on December 23, 2009.[2]  JA 1.  The Department of Labor's ("DOL") Office of Workers' Compensation Programs awarded benefits, and the West Virginia CWP Fund (the "Fund") then requested a hearing.[3]  JA 32.

After a hearing, ALJ Peter B. Silvain, Jr. considered the evidentiary record and awarded benefits on April 30, 2013.  JA 31.  The evidence was ruled to establish Mr. Gregory has a totally disabling respiratory or pulmonary impairment due to legal pneumoconiosis.  JA 58, 69, 71.  Dr. Gregory P. Stark, Mr. Gregory's treating physician, diagnosed legal pneumoconiosis in the form of occupationally-induced chronic bronchitis.  Drs. Peter G. Tuteur, George L. Zaldivar, and Robert J. Crisalli did not diagnose pneumoconiosis.  Each attributed Mr. Gregory's respiratory impairment to the effects of a 1993 motor-vehicle

---

[1]     Mr. Gregory filed his first claim for benefits on September 9, 2003, and then withdrew it.  He filed his second claim on September 23, 2003.  An ALJ denied the claim on July 18, 2008 because Mr. Gregory failed to establish any elements of entitlement.

[2]     As Mr. Gregory's last coal mine employment occurred in West Virginia, the law of the United States Court of Appeals for the Fourth Circuit applies to his claim.  *See Kopp v. Director, OWCP*, 877 F.2d 307, 308 (4th Cir. 1989).

[3]     Because this claim was filed after January 19, 2001, it is governed by 20 C.F.R. Parts 718 and 725.  *See* 20 C.F.R. §§ 718.2 (2014), 725.2 (2014).

accident, the accident's resulting tracheomalacia (a flaccidity of the trachea that can result in breathing obstruction) and stent placement, as well as obesity. The ALJ gave significant weight to Dr. Stark's diagnosis of legal pneumoconiosis, while giving little or no weight to the contrary physician opinions that Mr. Gregory was neither afflicted with nor disabled by legal pneumoconiosis. JA 68–69.

Aggrieved by the order awarding benefits, the Fund sought review by the Benefits Review Board. The Board affirmed on April 25, 2014. JA 73. The Board upheld the finding that Dr. Stark's diagnosis of legal pneumoconiosis was well-reasoned and well-documented, as well as the ALJ's decision to discount the contrary medical opinions that Mr. Gregory does not have totally disabling legal pneumoconiosis. JA 76–77. The Board thus affirmed the findings that Mr. Gregory has legal pneumoconiosis and is totally disabled due to that disease. JA 77–78.

The Fund moved for *en banc* reconsideration by the Board pursuant to 20 C.F.R. § 802.407, which the Board denied on August 28, 2014. JA 80. The Fund timely appealed the Board's decision to this Court on October 27, 2014. JA 83.

## B.  Relevant Facts

Mr. Gregory spent 25 years in coal mine employment. JA 22. He worked for Pen Coal Corporation for approximately 14 years, ending in 2001. JA 20. All

4

of Mr. Gregory's coal mine employment occurred above-ground, and his primary

work was as a dozer operator.  JA 20, 27.



JA 435.

*See id.*

*Id.*

JA 435–36.  Mr. Gregory testified in 2011 to

having a 15-to-20 pack-year cigarette-smoking history (JA 25, 28),

(*see* JA 412).

JA 297, 306.

JA 301, 313–17, 331–33.

5

 JA 327,

328-29.

JA 384, 425.

JA 438.



JA 444–45.

JA 446.

JA 454.

JA 364, 479.

JA 490–91.

*See* JA 491–92.

JA 492–93.

JA 337, 342, 348.

JA 343.

JA 346, 350.

---

[4]      A diagnosis of legal pneumoconiosis secondary to smoking is inconsistent with the definition of legal pneumoconiosis which is a chronic dust disease *arising* out of coal mine employment, not *arising* out of smoking



JA 356, 396.

JA 405, 418–20.

JA 413–14.

JA 419–20.

*See* JA 420.

JA 420–21.

*See* JA 103–07, 112–19, 121–22, 126, 131–34, 137–53, 158–59, 164–65, 167–80, 182–223, 225, 228–29, 231, 233–34, 243–47, 249–74, 278–79, 284–85, 292–93, 295–96.

██████████████████████████████████████████████████

████████████ JA 296. ██████████████████████████████

██████████████████████████████████████████████

████████████████████ *See id.* ███████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████

## IV.    SUMMARY OF ARGUMENT

A physician's medical opinion can satisfy a black lung benefits claimant's burden of proof only if the opinion is well-reasoned.  If an opinion provides only conclusions but provides no reasoning to support those conclusions, it merits no weight and it cannot establish a claimant's entitlement to black lung benefits.  Such an opinion relies on nothing more than the *ipse dixit* of the expert to persuade.  An agency fact-finder errs as a matter of law in crediting such an opinion, and that happened here.

To be awarded benefits, a benefits claimant must prove he has a lung disease, caused by coal mine dust exposure, that has rendered him totally disabled, from doing his coal mine employment from a respiratory or pulmonary standpoint.  Mr. Gregory presented several potentially favorable medical opinions, but the agency fact-finder credited just one—that of treating physician Dr. Stark.  The fact-finder deemed Dr. Stark's opinion "well-reasoned" and conferred benefits based on it alone.

Dr. Stark's opinion is *per se* unreasoned.   JA 296.  An unreasoned conclusory statement is not a "well-reasoned" medical opinion and cannot be viewed as substantial evidence to

support the agency award.  As a matter of law, Dr. Stark's opinion cannot be credited or be the basis for an award of benefits.  Since no other opinions favorable to Mr. Gregory were credited, the record cannot satisfy the burden of proof and he is not entitled to black lung benefits.

# V.    ARGUMENT

## A.    Standard of Review

In reviewing claims for benefits under the BLBA, this Court determines whether substantial evidence supports the findings of fact issued by the ALJ. *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938); *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 529 (4th Cir. 1998). In determining whether substantial evidence supports the ALJ's factual determinations, the Court should address whether all relevant evidence has been analyzed and whether the ALJ has sufficiently explained the rationale used in crediting certain evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439 (4th Cir. 1997).

The ALJ's and Board's conclusions of law are reviewed *de novo* to determine if they are rational and consistent with the law. *See Ballard*, 65 F.3d at 1193; *see also Island Creek Coal Co. v. Compton*, 211 F.3d 203, 207–08 (4th Cir. 2000).

13

### B. Discussion of Issues

**1.    Dr. Stark's diagnosis of "industrial chronic bronchitis" is unsupported by any explanation or reasoning. The agency fact-finder erred as a matter of law by crediting the opinion as "well-reasoned."**

The agency avoids addressing whether there is a logical basis to credit as well-reasoned Dr. Stark's diagnosis of legal pneumoconiosis, the only basis given for awarding Mr. Gregory disability benefits. This Court should reverse the agency's finding that Dr. Stark's diagnosis of legal pneumoconiosis is well-reasoned and should hold that Dr. Stark's opinion is unreasoned as a matter of law. As the only other medical opinions supporting Mr. Gregory's claim were properly discredited and Mr. Gregory cannot satisfy his burden of proof, the benefits award should be reversed. Alternatively, this Court should vacate and remand for the agency fact-finder to re-assess the evidence in a manner consistent with law.

The ALJ found Mr. Gregory is not entitled to the 15-year presumption of total disability due to pneumoconiosis. *See* JA 60. Mr. Gregory therefore had the burden of proof to establish by a preponderance of the evidence: (1) pneumoconiosis; (2) the pneumoconiosis arose out of coal mine employment; (3) a totally disabling respiratory or pulmonary impairment; and (4) the disabling impairment is due pneumoconiosis. 20 C.F.R. §§ 718.202–04 (2014). As neither

simple clinical[5] nor complicated pneumoconiosis[6] was found, Mr. Gregory could only prevail by establishing legal pneumoconiosis.[7]

The physicians to be considered were divided on whether Mr. Gregory has legal pneumoconiosis. Drs. Crisalli, Zaldivar, and Tuteur found no basis to diagnose legal pneumoconiosis. ██████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ *See* JA 297, 301, 313–17, 331–33, 367, 521;

386–87, 389; JA 435–36, 438–40, 442–43, 444–45, 449–50, 454. ██████████████

██████████████████████████████████████████████ JA 343, 405,

418–20. ██████████████████████████

---

[5]     "Clinical pneumoconiosis" is defined as "those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1) (2014).

[6]     The federal black lung regulations provide an irrebuttable presumption of total disability due to pneumoconiosis if: (A) an x-ray of the miner's lungs shows at least one opacity greater than one centimeter in diameter; (B) a biopsy reveals massive lesions in the lungs; or (C) a diagnosis by other means reveals a result equivalent to (A) or (B). 30 U.S.C. § 921(c)(3). "The condition described by these criteria is frequently referred to as 'complicated pneumoconiosis,' although that term does not appear in the statute." *E. Assoc. Coal Corp. v. Director, OWCP*, 220 F.3d 250, 255 (4th Cir. 2000).

[7]     "'Legal pneumoconiosis' includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2) (2014).

████████████████████████████████████████████████

████████████  JA 296.  In considering the issue of legal pneumoconiosis, the ALJ

discredited the opinions of Drs. Ammisetty,[8] Baker,[9] Crisalli, and Zaldivar.

JA 67–68.  The ALJ initially credited Dr. Tuteur's reasoning that the

tracheomalacia and stent placement fully explain Mr. Gregory's obstruction, but

then later inconsistently discredited this same reasoning.  *Compare* JA 67 *with*

JA 69.  ████████████████████████████████████

---

[8]    "Dr. Ammisetty failed to provide objective medical evidence, beyond the Claimant's reported history, to support his opinion.  Thus, I find this portion of his opinion regarding legal pneumoconiosis unreasoned and give it little weight." JA 67.

[9]    Though finding merit in Dr. Baker's reasoning that the effects of coal mine dust and smoking are synergistic and additive, the ALJ nonetheless "f[ou]nd Dr. Baker's reasoning to be incomplete as he did not fully understand, nor did he explain, the effects of the Claimant's trancheomalacia and resultant placement of a tracheal stent on the Claimant's respiratory condition."  JA 67.  The ALJ continued:

> Therefore, the medical evidence indicates that the Claimant's obstructive abnormality is not, as Dr. Baker suggests, primarily the result of COPD, but rather tracheomalacia and the placement of a tracheal stent.  Dr. Baker did not review the Claimant's treatment records regarding the tracheomalacia, but he agreed that the placement of a tracheal stent can cause obstruction.  As Dr. Baker did not fully address the extent of the Claimant's tracheomalacia and the extent to which the stent placement may have been causing the Claimant's obstruction, I find that Dr. Baker's legal pneumoconiosis opinion is entitled to less weight.

JA 67–68.

16

██████████████████████████████████

█████████████████████████████████

████████████████████████████████

███████████████████████████████

JA 296.  The ALJ credited Dr. Stark's opinion as well-reasoned and well-documented.  *See* JA 68–69.  Based solely on Dr. Stark's opinion, the ALJ found legal pneumoconiosis established and attributed total disability to it.  The Board affirmed these findings.  JA 76–77.

The crediting of Dr. Stark's opinion and resultant finding of legal pneumoconiosis should not stand, as Dr. Stark's diagnosis of industrial chronic bronchitis is insufficient to meet the regulatory requirement for a finding of legal pneumoconiosis and carry Mr. Gregory's burden to establish legal pneumoconiosis by a preponderance of the evidence.  While it is an ALJ's responsibility as a fact-finder to weigh conflicting evidence, the fact-finder may not abuse such discretion.  The Administrative Procedure Act[10] requires "reasoned decision-making."  *Allentown Mack Sales and Serv., Inc. v. NLRB*, 522 U.S. 359, 374

---

[10]    The provisions of the APA are applicable to the BLBA through the Longshore and Harbor Workers' Compensation Act.  *See* 33 U.S.C. § 919(d), as incorporated by 30 U.S.C. § 932(a); *Hillibush v. Dep't of Labor*, 853 F.2d 197, 202 n.6 (3d Cir. 1988); *N. Am. Coal Co. v. Miller*, 870 F.2d 948, 951 (3d Cir. 1989); *Peabody Coal Co. v. Hale*, 771 F.2d 246, 248 (7th Cir. 1985); 20 C.F.R. § 725.477(b) (2014).

17

(1998).  The process by which the ALJ reaches his result must be "logical and rational."  *Id.* at 374.  An ALJ must adequately explain why he credited certain evidence and discredited other evidence.  *Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 193 (4th Cir. 2000); *Hicks*, 138 F.3d at 533.  Where pneumoconiosis is found established by evidence other than chest x-ray, pathology, or legal presumption, "[a]ny such finding shall be based on objective medical evidence . . . [and] shall be supported by a **reasoned** medical opinion."  20 C.F.R. § 718.202(a)(4) (2014) (emphasis added).  A well-reasoned medical opinion rests on documentation adequate to support the physician's conclusions.  *See Fields v. Island Creek Coal Co.*, 10 Black Lung Rep. (Juris.) 1-19, 1-22 (Ben. Rev. Bd. 1987).  There is no documentation to support a finding that Dr. Stark's opinion is a reasoned medical opinion.

The ALJ found "Dr. Stark's report qualifies as a well-reasoned diagnosis of legal pneumoconiosis."  JA 69.  The ALJ identified as Dr. Stark's "well-reasoned medical opinion" a single-page questionnaire from the hundreds of pages of records in which Dr. Stark responded "yes" to the question "based upon your examination, does the miner have an occupational lung disease which was caused by his coal mine employment?"  *See* JA 68–69 (citing JA 296). ███████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████ JA 296. ██████████████████████████████

████████████████████████████████████████

███████████████████████████████████ *Id.* The foregoing

constitutes the entirety of Dr. Stark's discussion and reasoning for his opinions on

legal pneumoconiosis and disability causation.[11]  Dr. Stark's "reasoning" for

finding legal pneumoconiosis in the form of industrial chronic bronchitis, and that

coal mine dust contributed to the supposed disability, is nonexistent or conclusory.

His opinion is poorly reasoned as a matter of law.  There is no basis to understand

why or how coal mine dust has caused a chronic dust disease of the lungs.

As support, the ALJ noted "the fact that Dr. Starks [sic] diagnosed

'industrial bronchitis' indicates that he believes the Claimant's coal dust exposure

was a causal factor in his bronchitis."  JA 69.  Dr. Stark's mere belief that coal dust

exposure contributed to the alleged chronic bronchitis does not explain his reasons

for so believing.  Any explanation is absent in Dr. Stark's opinion.  Since *Daubert*

*v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993), courts have understood the

importance of ensuring that supposedly scientific testimony meets minimum

scientific standards of accuracy.  *See Gen'l Elec. Co. v. Joiner*, 522 U.S. 136, 146

---

[11] ██████████████████████████████████████ *See* JA 296. ██████

██████████████████ *See id.*

(1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *see also Peabody Coal Co. v. McCandless*, 255 F.3d 465, 469 (7th Cir. 2001) ("ALJ and BRB avoided medical dispute by adopting a non-medical rule that physicians who work in white smocks are more reliable than physicians who do their work in the laboratory.").  Where no explanation is provided to support a medical opinion's conclusions, the opinion fails to satisfy these standards of accuracy.

Though the ALJ concedes Dr. Stark "did not spend a great deal of time explaining his opinion . . ." *id.*, in fact Dr. Stark failed to explain his conclusion. Any other decision is not consistent with substantial evidence contained in the record and cannot be affirmed.  The questionnaire responses provide no explanation for Dr. Stark's beliefs that coal mine dust exposure caused the alleged chronic bronchitis and that it "worsened" Mr. Gregory's condition.  Only conclusions are given.  A conclusory statement is not a reasoned opinion. *See Conley v. Nat'l Mines Corp.*, 595 F.3d 297, 303–04 (6th Cir. 2010) (physician's conclusory and unsupported opinion generally linking miner's pneumoconiosis to his death from metastatic lung cancer was insufficient to support determination that miner's death was hastened by legal pneumoconiosis, where physician's opinion failed to specifically define process of why, how, and to

what extent pneumoconiosis hastened death); *see also Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1407 (D.C. Cir. 1995) ("Because the [agency] only listed the facts and stated its conclusions, but did not connect them in any rational way, the [agency's] decisions are arbitrary and capricious.  Where an agency has failed . . . to explain the path it has taken, we have no choice but to remand for a reasoned explanation." (citation, internal quotation marks, and footnote omitted)).

Dr. Stark's unexplained diagnosis of "industrial chronic bronchitis" fails to provide any reasoning actually connecting Mr. Gregory's impairment symptoms with his coal mine dust exposure based on objective clinical testing and sound medical reasoning as § 718.202(4)(a) mandates.  *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 674 (6th Cir. 2010) (rejecting doctor's differential medical opinion about disease's etiology where the doctor's "efforts to 'rule in' manganese exposure as a possible cause or to 'rule out' other possible causes turned on speculation, not a valid methodology").

Moreover, finding Dr. Stark's opinion is "well-reasoned" is inconsistent with the ALJ's treatment of Dr. Paulus, another treating physician, concerning clinical pneumoconiosis.  The ALJ notes that:

> Dr. Paulus, one of the Claimant's treating physicians, diagnosed the Claimant with pneumoconiosis.  He did not, however, explain how he arrived at this diagnosis.  An unexplained diagnosis of pneumoconiosis in the treatment records may be rejected.  Therefore, I give no weight to this diagnosis of pneumoconiosis contained in the treatment records.

21

JA 66. Dr. Paulus's opinion was properly rejected, as he indeed provided no explanation for his diagnosis of pneumoconiosis. That same rationale for rejecting Dr. Paulus's unexplained diagnosis applies equally to Dr. Stark's unexplained diagnosis of "industrial chronic bronchitis" or legal pneumoconiosis. By failing to apply the same rationale where it equally applies, the ALJ has applied inconsistent standards and engaged in an impermissibly selective evaluation of the medical opinion evidence. *See Freeman United Coal Mining Co. v. Stone*, 957 F.2d 360, 362–63 (7th Cir. 1992); *Wright v. Director, OWCP*, 7 Black Lung Rep. (Juris.) 1-475, 1-477 (Ben. Rev. Bd. 1984).

The ALJ seems to champion Dr. Stark's opinion by claiming the regulatory preamble, as well as Dr. Baker's separate analysis, "clearly support the theory of coal dust being a causative factor in the development of chronic bronchitis." JA 69. In so doing, the ALJ misconstrues the standard of proof required to establish pneumoconiosis. The fact that the preamble supports the precept that coal dust can be a causative factor in the development of chronic bronchitis does not mean all miners with chronic bronchitis have legal pneumoconiosis. That coal dust **can** cause chronic bronchitis does not support the finding that, in this case, coal dust **did** cause Mr. Gregory's chronic bronchitis. The ALJ errs in equating a general possibility with a specific certainty.

22

Mr. Gregory has the burden of proof to establish: (1) he has a chronic dust disease of the lungs (2) arising out of coal mine employment; and (3) that this disease contributed to (4) his disability. To prove industrial chronic bronchitis is legal pneumoconiosis, Mr. Gregory must prove chronic bronchitis arose out of coal mine dust. ██████████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████ *See* JA 450.

Even assuming the existence of chronic bronchitis, Mr. Gregory cannot satisfy his burden to prove the bronchitis was caused by coal mine dust merely through general studies indicating coal mine dust can cause chronic bronchitis in some cases.

Dr. Baker's analysis is irrelevant to assessing the credibility of Dr. Stark's opinion because the ALJ previously properly discredited Dr. Baker's reasoning on the issue of legal pneumoconiosis. *See* JA 67–68 (finding Dr. Baker's legal pneumoconiosis opinion "entitled to less weight" because he "did not fully address the extent of the Claimant's tracheomalacia and the extent to which the stent placement may have been causing the Claimant's obstruction."). A fact-finder cannot reject an expert's reasoning on a given issue in one place, and then credit that same reasoning in another place to support another expert's opinion. Doing so

23

employs inconsistent standards (*see Stone*, 957 F.2d at 362–63; *Wright*, 7 Black Lung Rep. at 1-477) and engenders irrational and inconsistent decision-making, rendering the ALJ's opinion arbitrary and capricious within the meaning of the APA.  *See Motor Vehicles Mfrs. Ass'n of Am. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (for agency action to not be considered arbitrary and capricious, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'") (citation omitted); *see also Am. Tel. & Tel. Co. v. FCC*, 974 F.2d 1351, 1354 (D.C. Cir. 1992) ("[W]e will not uphold an agency's action where it has failed to offer a reasoned explanation that is supported by the record.").

The ALJ also reasons Dr. Stark "treated the Claimant for many years and reviewed many objective tests such as chest x-rays, PFTs, and ABGs."  JA 69. Such reasoning is no more than a hollow reliance on the now-rejected treating-physician rule, under which treating physicians' opinions were automatically or mechanically given greater deference merely because of their experience with treating the claimant.  The ALJ denies he is according special deference to Dr. Stark's opinion because he is a treating physician and says he is instead "merely pointing out that Dr. Stark's treatment of the Claimant and familiarity with his medical and social histories is one reason I find his opinion well-reasoned and

24

well-documented." JA 69 n.93. This "alternative" reasoning actually states the very rationale behind the treating-physician rule—that a treating physician's opinion is entitled to greater deference *because of* his familiarity with the patient's medical and social histories. The ALJ is indeed according special deference to Dr. Stark merely because of his status as Mr. Gregory's treating physician.

Title 20 C.F.R. §718.104(d), the "treating physician" regulation, does not automatically provide that controlling weight be attributed to the opinion of any doctor who has occasion to administer treatment to a former miner. The regulation requires the analysis of four specific factors concerning the doctor/patient relationship between any treating physician whose report is admitted into evidence and the miner. The regulation requires the fact-finder to take into consideration these factors in weighing the opinion of a potential treating physician:

> (1) **<u>The nature of relationship</u>**. The opinion of a physician who has treated the miner for respiratory or pulmonary conditions is entitled to more weight than a physician who has treated the miner for non-respiratory conditions;

> (2) **<u>Duration of relationship</u>**. The length of the treatment relationship demonstrates whether the physician has observed the miner long enough to obtain a superior understanding of his or her condition;

> (3) **<u>Frequency of treatment</u>**. The frequency of physician/patient visits demonstrates whether the physician has observed the miner often enough to obtain a superior understanding of his or her condition; and

(4) **Extent of treatment**.   The types of testing and examinations conducted during the treatment relationship demonstrate whether the physician has obtained superior and relevant information concerning the miner's condition.

*Id.* § 718.104(d)(1)–(4) (2014).  Where the doctor /patient relationship meets the

requirements of each of these four factors, the regulation merely provides:

> [I]n appropriate cases, the relationship between the miner and his treating physician may constitute substantial evidence in support of the adjudication officer's decision to give that physician's opinion controlling weight, provided that the weight given to the opinion of a miner's treating physician shall also be based upon the credibility of the physician's opinion in light of its reasoning and documentation, other relevant evidence and the record as a whole.

*Id.* § 718.104(d)(5) (2014).  The ALJ neither analyzed nor even considered these

factors in deferring to Dr. Stark's opinion.  As such, the decision is contrary to law.

While reasoning that Dr. Stark "reviewed many objective tests such as chest

x-rays, PFT's, and ABG's," ██████████████████████████████████

██████  *See* JA 384, 425.  ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████  Dr. Stark's status as Mr. Gregory's

treating physician does not entitle his opinion to additional weight because

Dr. Tuteur's access to a broader database of medical information lends greater

support and documentation to this assessment.  The ALJ fails to acknowledge this fact in summarily crediting Dr. Stark's opinion.

Finally, the ALJ claims Dr. Stark's "opinion does suffer[12] from an invalid understanding of the effects of coal dust on the respiratory system, such as Dr. Tuteur's does."  JA 69.  As explained (*see infra* at 29–33), Dr. Tuteur's opinion does not suffer from an invalid understanding of the effects of coal mine dust on the respiratory system.   Dr. Stark's understanding of these effects cannot even be determined as he offers no reasoning to explain what understanding he has.  Dr. Stark does not discuss the effect of coal mine dust on either Mr. Gregory's respiratory system specifically or on coal miners' respiratory systems in general.  Dr. Stark does not explain how coal mine dust could have caused industrial bronchitis or how coal mine dust could have contributed to Mr. Gregory's respiratory impairment.  Since there is no way to compare Dr. Stark's  understanding with Dr. Tuteur's, the ALJ acts irrationally in making the comparison and offers a finding not supported by substantial evidence contained in this record.

The Board's reasoning for upholding the crediting of Dr. Stark's diagnosis of legal pneumoconiosis is also untenable.  The Board considered Dr. Stark's diagnosis well-reasoned because it is: (1) "consistent with the definition of legal

---

[12]    This is presumably scrivener's error and the ALJ meant "does not suffer."

27

pneumoconiosis set forth in 20 C.F.R. § 718.202(a)(2)"; (2) "consistent with the comment made by the Department of Labor (DOL) in the preamble to the 2001 revised regulations that coal dust exposure can cause clinically significant obstructive lung disease"; and (3) supported by Dr. Baker's analysis "based on Dr. Baker's diagnosis of COPD caused by smoking and coal dust exposure, and his statements that these causal factors have a synergistic effect and the extent to which each contributes cannot be identified with certainty."  JA 76–77.

In other words, the Board reasons Dr. Stark's diagnosis of legal pneumoconiosis is well-reasoned because the regulations and the 2000 regulatory preamble recognizes legal pneumoconiosis as a possible diagnosis.  *See id.*  But the issue is not whether Dr. Stark diagnosed legal pneumoconiosis; the issue is whether his diagnosis was well-reasoned and well-documented.  The mere fact that a doctor diagnoses legal pneumoconiosis does not mean the diagnosis is well-reasoned or well-documented.  The Board's tendentious, circular logic avoids the issue that Dr. Stark's brief opinion is insufficient to carry Mr. Gregory's burden to establish he has legal pneumoconiosis that caused or contributed to his disability.[13]

---

[13]    For the reasons given above with respect to the ALJ's reasoning, the Board's reliance on Dr. Baker's opinion to prop up Dr. Stark's opinion is also invalid. *See supra* at 23–24.  The Board neither acknowledged nor resolved the obvious contradiction in crediting Dr. Stark's opinion based on reasoning contained in another expert's discredited medical opinion.

Because the agency fails to consider the conclusory nature of Dr. Stark's opinion in finding it well-reasoned and well-documented, and because none of the reasons given for crediting the opinion are rational, supported by substantial evidence, or consistent with the law, the Court should reverse the credibility finding and the award of benefits. Alternatively, the Court should vacate and remand for further consideration in a manner consistent with law.

**2.    The agency fact-finder employed inconsistent and irrational reasoning for rejecting Dr. Tuteur's and Dr. Crisalli's opinions that Mr. Gregory does not have legal pneumoconiosis.**

The ALJ rejected Dr. Tuteur's opinion that Mr. Gregory does not have legal pneumoconiosis based on either an apparent misreading of some of Dr. Tuteur's reasoning or a misunderstanding of the applicable burden and standard of proof. The ALJ rejected Dr. Crisalli's opinion that Mr. Gregory does not have legal pneumoconiosis based on Dr. Crisalli's supposed view that Mr. Gregory does not have restriction. JA 67–68. The Board affirmed the ALJ's reasoning. JA 77. The rejection of these opinions is irrational, unsupported by substantial evidence, and contrary to law.

**a.    Dr. Tuteur**

The ALJ rejected Dr. Tuteur's opinion since he "improperly rejected" a diagnosis of chronic bronchitis, or the "COPD phenotype." *See* JA 68. ███████

████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

JA 68, 450.  █████████████████████████████████████

███████████████████████████████████████████

████████████████████████  JA 450.  The ALJ said Dr. Tuteur nevertheless

"entertained the possibility that the Claimant's obstruction was not entirely caused

by the tracheal stent" because the doctor noted "we still have to marginalize the

risk of cigarette smoking . . . versus coal mine exposure . . . ."  JA 68.  The ALJ

rejected Dr. Tuteur's hypothetical reasoning about some possible contribution of

tobacco smoke versus coal mine dust because the doctor "espoused the erroneous

view that the risk of developing clinically meaningful airway obstruction from

smoking compared to coal dust inhalation is twenty to one."  *Id.*  Similarly, the

Board concluded "Dr. Tuteur's view, that coal dust exposure rarely causes

obstruction in miners who smoked, conflicts with the DOL's position that the

medical literature establishes that smoking and nonsmoking miners are equally at

risk for developing COPD."  JA 77.

The ALJ suggests Dr. Tuteur misapplied the WHO definition of chronic

bronchitis—which requires that cough be present for most days three months out

of the year in two successive years with no other explanation for the cough—by

effectively conceding the possibility of two other explanations, smoking and coal

30

mine dust.  JA 68.  The ALJ further suggests Dr. Tuteur erred by considering

Mr. Gregory's coal mine dust exposure insignificant when compared to his

smoking history by using the Board-rejected 20-to-1 ratio.  *Id.*

Such a criticism of Dr. Tuteur's reasoning by this agency fact-finder is

unsupported.  The agency misconstrues the effect and significance of Dr. Tuteur's

reasoning.  It is essentially implied that because the 20:1 ratio of smoking's effects

versus coal dust's effects cannot be accepted, Dr. Tuteur necessarily recognized the

possibility that Mr. Gregory has the "COPD phenotype," that coal mine dust

contributed to his obstruction.  The implication is incorrect.  █████████████

████████████████████████████████████████████████████████████████

██████████████████████████    *See* JA 455.  ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

JA 454.

      ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

*Id.*

While Dr. Tuteur's caveat about the theoretical contribution of coal mine

dust could be significant if the 15-year presumption and the accompanying rule-out

rebuttal standard applied, they do not here.  *See* JA 60.  Mr. Gregory has the

burden to establish, by a preponderance of the evidence, that "pneumoconiosis . . .

is a substantially contributing cause of the miner's totally disabling respiratory or

pulmonary impairment."  20 C.F.R. § 718.204(c)(1) (2014).  This requires proof

that pneumoconiosis "has a material adverse effect on the miner's respiratory or

pulmonary condition, or materially worsens a totally disabling respiratory or

pulmonary impairment which is caused by a disease or exposure unrelated to coal

mine employment."  *Id.*  Dr. Tuteur's acknowledgment of the theoretical

possibility that coal mine dust contributed to an alleged "COPD phenotype" is thus

no grounds for discounting his opinion on the subject, even if the 20-to-1 ratio is

thought to be contrary to the preamble.  Such decision-making does not comport

with the APA's reasoned-explanation requirement. *See Gunderson v. U.S. Dep't of Labor,* 601 F.3d 1013, 1022 (10th Cir. 2010) ("This duty of explanation has added importance for cases in which medical or scientific evidence has been presented. [A] scientific dispute must be resolved on scientific grounds. This requires the ALJ to articulate a reason and provide support for favoring one opinion over another.") (internal quotation marks omitted).

████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████

████████████████████████     *See* JA 455. To the extent Dr. Tuteur eliminated coal mine dust as a possible contributor because he considered smoking 20 times more harmful, it is immaterial because Dr. Tuteur reasonably concluded neither smoking nor coal mine dust contributed. Reviewing medical opinions for supposed conflicts with the preamble "requires determining whether and to what extent those hostile opinions affected the medical diagnosis." *Greene v. King James Coal Mining, Inc.*, 575 F.3d 628, 638 (6th Cir. 2009). A fact-finder may use disagreement with a single rationale in an opinion to jettison the entire opinion only where the rationale "detracts from the credibility of the entire opinion, or [] the valid rationales are inextricably linked to the invalid rationale . . . ." *Bailes v. W.V. CWP Fund*, BRB No. 13-0528 BLA, at *5 n.8 (Ben. Rev. Bd. May 13, 2014)

33

(unpub.) (citing *Kozele v. Rochester & Pittsburgh Coal Co.*, 6 Black Lung Rep. 1-378 (Ben. Rev. Bd. 1983)).  Because the 20-to-1 ratio is analytically irrelevant, it cannot detract from the entire opinion's credibility and is not inextricably linked to Dr. Tuteur's valid rationales.  It was error to reject Dr. Tuteur's entire opinion for one rationale's supposed conflict with the preamble.

The ALJ also applies inconsistent standards in evaluating Dr. Tuteur's medical reasoning.  The ALJ initially credited Dr. Tuteur's reasoning (that tracheomalacia and stent placement fully explain Mr. Gregory's obstruction) to discredit Dr. Baker's opinion for the latter's failure to fully address the extent of the tracheomalacia and the extent to which the stent placement may have contributed to impairment.  *See* JA 67 ("Dr. Tuteur fully explained why that obstruction is primarily the result of the tracheomalacia and stent placement and not the presence of 'intrinsic airways disease of primary origin.'").  When analyzing Dr. Tuteur's opinion, the ALJ inconsistently considered the doctor's explanation concerning obstruction as lacking in substance.  *See* JA 69 (saying Dr. Tuteur's opinion "suffer[s] from an invalid understanding of the effects of coal dust on the respiratory system").

████████████████████████████████████████  JA 450.

Despite his previous crediting of this explanation to discredit Dr. Baker's opinion,

the ALJ later rejected the same explanation.  Dr. Tuteur's explanation of the

obstruction's cause is acceptable for undermining Dr. Baker's opinion, but

irrationally deemed unacceptable for supporting the absence of legal

pneumoconiosis.  The ALJ applied inconsistent standards and engaged in an

impermissibly selective evaluation of the medical-opinion evidence.  *See Stone*,

957 F.2d at 362–63; *Wright*, 7 Black Lung Rep. at 1-477.  The Board neither

addressed nor resolved this inconsistency in the assessment of Dr. Tuteur's

opinion.  For all these reasons, the agency's discrediting of Dr. Tuteur's opinion

should be vacated.

### b.    Dr. Crisalli

The ALJ rejected Dr. Crisalli's 2006 assessment Mr. Gregory does not have

legal pneumoconiosis by focusing on Dr. Crisalli's statement that Mr. Gregory's

contemporaneous pulmonary function tests were variable and tended to rule out a

restrictive defect.  JA 67.  The ALJ noted the physicians who reviewed

Mr. Gregory's most recent pulmonary function tests agreed he has some

restriction.  *Id.*  From this, the ALJ concluded Dr. Crisalli's opinion is inconsistent

with the most recent and probative medical evidence, and gave his opinion little

weight.  *Id.*  The Board affirmed, holding the ALJ "rationally found that

35

Dr. Crisalli's failure to definitively diagnose a restrictive defect, contrary to the physicians who submitted the most recent medical opinions of record, made his opinion ruling out the presence of legal pneumoconiosis less credible . . . ." JA 77.

The rejection of Dr. Crisalli's opinion is erroneous, as Dr. Crisalli did not "fail[] to definitively diagnose a restrictive defect." ███████████████████

██████████████████████████████████

██████████████████████████████ JA 327.

████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

██████ JA 328–29.  Dr. Crisalli's opinion is not inconsistent with the most recent medical evidence regarding the restrictive defect present.

In any event, even if Dr. Crisalli indeed believes Mr. Gregory has no restriction, the agency fact-finder fails to explain how this is relevant to an opinion about the existence of legal pneumoconiosis.  Mr. Gregory's alleged legal pneumoconiosis is based on the supposed presence of chronic bronchitis. *See* JA 68–69 (crediting Dr. Stark's opinion that Mr. Gregory has industrial chronic bronchitis, which constitutes legal pneumoconiosis).  Chronic bronchitis is one possible aspect of COPD—chronic *obstructive* pulmonary disease. *See* JA 449–53 ████████████████████████████████

36

████████████████████████████████.  In other words, the alleged legal

pneumoconiosis in this case depends on an obstructive impairment, not a

restrictive impairment.  Any finding of restriction or lack thereof is logically

immaterial to determination of legal pneumoconiosis in this case.  The purported

flaw identified in Dr. Crisalli's opinion thus does not detract from his entire

opinion's credibility and is not inextricably linked to his opinion's valid rationales.

*Bailes*, BRB No. 13-0528 BLA at *5 n.8 (citing *Kozele*, 6 Black Lung Rep. 1-378).

Dr. Crisalli's opinion cannot be rejected in full on the "no-restriction" basis as the

agency concludes.

 In sum, if the Court does not reverse the award due to the erroneous

crediting of Dr. Stark's opinion, the Court should vacate and remand for

re-assessment of Dr. Tuteur's and Dr. Crisalli's opinions.

 **3. Dr. Stark's diagnosis of "industrial chronic bronchitis" was the only medical opinion credited that supported finding totally disabling legal pneumoconiosis.  Since Dr. Stark's opinion is *per se* unreasoned, as a matter of law Mr. Gregory cannot be found to be totally disabled due to legal pneumoconiosis.**

 After crediting Dr. Stark's opinion finding legal pneumoconiosis, the ALJ

concluded legal pneumoconiosis was a substantially contributing cause of

Mr. Gregory's disability.  *See* JA 61.  The ALJ did so by again crediting Dr. Stark.

"Of these physicians, I find Dr. Stark the most persuasive and well-reasoned

because he opined that the Claimant's severe impairment is the result of

tracheomalacia and industrial bronchitis, *i.e.* legal pneumoconiosis, which is consistent with my findings and supported by the medical evidence in the record." *Id.* The ALJ found the opinions of Drs. Crisalli, Zaldivar, and Tuteur were "entitled to less weight" on the issue of disability causation because they "are in conflict with my findings on the existence of pneumoconiosis and total respiratory disability . . . ." JA 60–61. The Board again affirmed. JA 78.

As discussed above, the ALJ erred in finding legal pneumoconiosis based solely upon Dr. Stark's unreasoned and undocumented opinion. Because the finding of legal coal workers' pneumoconiosis is irrational, unsupported by substantial evidence, and contrary to law, the disability-causation finding is similarly irrational, unsupported by substantial evidence, and contrary to law. The errors in crediting Dr. Stark's opinion and discrediting the opinions of Dr. Tuteur and Dr. Crisalli to find legal pneumoconiosis therefore require reversing, or vacating and remanding, the finding regarding disability causation.

## VI.    CONCLUSION

The West Virginia CWP Fund, as carrier for Pen Coal Corporation,

respectfully requests the Board's decision and order affirming the ALJ's award of

benefits be reversed, or vacated and remanded for reconsideration under the BLBA

and black lung regulations.


Respectfully submitted,

**WEST VIRGINIA CWP FUND, as carrier for
PEN COAL CORPORATION,**

By Counsel.


/s/ Jeffrey R. Soukup
Jeffrey R. Soukup
Kentucky Bar No. 92029
Jackson Kelly PLLC
175 E. Main St., Ste. 500
Lexington, KY  40507
(859) 288-2826

## VII.    REQUEST FOR ORAL ARGUMENT

This case presents questions of law important for consideration of claims under the BLBA.  The West Virginia CWP Fund respectfully requests this matter be set for oral argument to assist this Court in understanding the full extent of the medical, legal, and factual issues presented by the case.

## VIII.    ADDENDUM OF STATUTES, RULES, and REGULATIONS

**30 U.S.C. § 921:**

(a) Promulgation; payment of benefits

The Secretary shall, in accordance with the provisions of this part, and the regulations promulgated by him under this part, make payments of benefits in respect of total disability of any miner due to pneumoconiosis, and in respect of the death of any miner whose death was due to pneumoconiosis or, except with respect to a claim filed under part C of this subchapter on or after the effective date of the Black Lung Benefits Amendments of 1981, who at the time of his death was totally disabled by pneumoconiosis.

(b) Promulgation of standards determining total disability

The Secretary shall by regulation prescribe standards for determining for purposes of subsection (a) of this section whether a miner is totally disabled due to pneumoconiosis and for determining whether the death of a miner was due to pneumoconiosis. Regulations required by this subsection shall be promulgated and published in the Federal Register at the earliest practicable date after December 30, 1969, and in no event later than the end of the third month following December 1969. Final regulations required for implementation of any amendments to this subchapter shall be promulgated and published in the Federal Register at the earliest practicable date after the date of enactment of such amendments, and in no event later than the end of the fourth month following the month in which such amendments are enacted. Such regulations may be modified or additional regulations promulgated from time to time thereafter.

(c) Presumptions

For purposes of this section--

> **(1)** If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines there shall be a rebuttable presumption that his pneumoconiosis arose out of such employment.

> **(2)** If a deceased miner was employed for ten years or more in one or more coal mines and died from a respirable disease there shall be a rebuttable

41

presumption that his death was due to pneumoconiosis. The provisions of this paragraph shall not apply with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981.

**(3)** If a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentgenogram, yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization, (B) when diagnosed by biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. as the case may be.

**(4)** if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

**(5)** In the case of a miner who dies on or before March 1, 1978, who was employed for 25 years or more in one or more coal mines before June 30,

42

1971, the eligible survivors of such miner shall be entitled to the payment of benefits, at the rate applicable under section 922(a)(2) of this title, unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis. Eligible survivors shall, upon request by the Secretary, furnish such evidence as is available with respect to the health of the miner at the time of his or her death. The provisions of this paragraph shall not apply with respect to claims filed on or after the day that is 180 days after the effective date of the Black Lung Benefits Amendments of 1981.

(d) Applicability of presumptions

Nothing in subsection (c) of this section shall be deemed to affect the applicability of subsection (a) of this section in the case of a claim where the presumptions provided for therein are inapplicable.

**20 C.F.R. §718.104 (2014):**

(a) A report of any physical examination conducted in connection with a claim shall be prepared on a medical report form supplied by the Office or in a manner containing substantially the same information. Any such report shall include the following information and test results:

    (1) The miner's medical and employment history;

    (2) All manifestations of chronic respiratory disease;

    (3) Any pertinent findings not specifically listed on the form;

    (4) If heart disease secondary to lung disease is found, all symptoms and significant findings;

    (5) The results of a chest X-ray conducted and interpreted as required by § 718.102; and

    (6) The results of a pulmonary function test conducted and reported as required by § 718.103. If the miner is physically unable to perform a pulmonary function test or if the test is medically contraindicated, in the absence of evidence establishing total disability pursuant to § 718.304, the

43

report must be based on other medically acceptable clinical and laboratory diagnostic techniques, such as a blood gas study.

(b) In addition to the requirements of paragraph (a), a report of physical examination may be based on any other procedures such as electrocardiogram, blood-gas studies conducted and reported as required by § 718.105, and other blood analyses which, in the physician's opinion, aid in his or her evaluation of the miner.

(c) In the case of a deceased miner, where no report is in substantial compliance with paragraphs (a) and (b), a report prepared by a physician who is unavailable may nevertheless form the basis for a finding if, in the opinion of the adjudication officer, it is accompanied by sufficient indicia of reliability in light of all relevant evidence.

(d) Treating physician. In weighing the medical evidence of record relevant to whether the miner suffers, or suffered, from pneumoconiosis, whether the pneumoconiosis arose out of coal mine employment, and whether the miner is, or was, totally disabled by pneumoconiosis or died due to pneumoconiosis, the adjudication officer must give consideration to the relationship between the miner and any treating physician whose report is admitted into the record. Specifically, the adjudication officer shall take into consideration the following factors in weighing the opinion of the miner's treating physician:

(1) Nature of relationship. The opinion of a physician who has treated the miner for respiratory or pulmonary conditions is entitled to more weight than a physician who has treated the miner for non-respiratory conditions;

(2) Duration of relationship. The length of the treatment relationship demonstrates whether the physician has observed the miner long enough to obtain a superior understanding of his or her condition;

(3) Frequency of treatment. The frequency of physician-patient visits demonstrates whether the physician has observed the miner often enough to obtain a superior understanding of his or her condition; and

(4) Extent of treatment. The types of testing and examinations conducted during the treatment relationship demonstrate whether the physician has obtained superior and relevant information concerning the miner's condition.

44

(5) In the absence of contrary probative evidence, the adjudication officer shall accept the statement of a physician with regard to the factors listed in paragraphs (d)(1) through (4) of this section. In appropriate cases, the relationship between the miner and his treating physician may constitute substantial evidence in support of the adjudication officer's decision to give that physician's opinion controlling weight, provided that the weight given to the opinion of a miner's treating physician shall also be based on the credibility of the physician's opinion in light of its reasoning and documentation, other relevant evidence and the record as a whole.

## 20 C.F.R. § 718.201 (2014):

(a) For the purpose of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes both medical, or "clinical", pneumoconiosis and statutory, or "legal", pneumoconiosis.

(1) Clinical Pneumoconiosis. "Clinical pneumoconiosis" consists of those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment.

(2) Legal Pneumoconiosis. "Legal pneumoconiosis" includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment.

(b) For purposes of this section, a disease "arising out of coal mine employment" includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.

(c) For purposes of this definition, "pneumoconiosis" is recognized as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure.

45

**20 C.F.R. § 718.202 (2014):**

(a) A finding of the existence of pneumoconiosis may be made as follows in paragraphs (a)(1) through (4) of this section:

   (1) A chest X–ray conducted and classified in accordance with § 718.102 may form the basis for a finding of the existence of pneumoconiosis. Except as otherwise provided in this section, where two or more X–ray reports are in conflict, in evaluating such X–ray reports consideration must be given to the radiological qualifications of the physicians interpreting such X–rays (see § 718.102(d)).

   (2) A biopsy or autopsy conducted and reported in compliance with § 718.106 may be the basis for a finding of the existence of pneumoconiosis. A finding in an autopsy or biopsy of anthracotic pigmentation, however, must not be considered sufficient, by itself, to establish the existence of pneumoconiosis. A report of autopsy must be accepted unless there is evidence that the report is not accurate or that the claim has been fraudulently represented.

   (3) If the presumptions described in § 718.304 or § 718.305 are applicable, it must be presumed that the miner is or was suffering from pneumoconiosis.

   (4) A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X–ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. Any such finding must be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding must be supported by a reasoned medical opinion.

(b) A claim for benefits must not be denied solely on the basis of a negative chest X–ray.

(c) A determination of the existence of pneumoconiosis must not be made--

   (1) Solely on the basis of a living miner's statements or testimony; or

46

(2) In a claim involving a deceased miner, solely on the basis of the affidavit(s) (or equivalent testimony) of the claimant and/or his or her dependents who would be eligible for augmentation of the claimant's benefits if the claim were approved.

**20 C.F.R. § 718.204 (2014):**

(a) General. Benefits are provided under the Act for or on behalf of miners who are totally disabled due to pneumoconiosis, or who were totally disabled due to pneumoconiosis at the time of death. For purposes of this section, any nonpulmonary or nonrespiratory condition or disease, which causes an independent disability unrelated to the miner's pulmonary or respiratory disability, shall not be considered in determining whether a miner is totally disabled due to pneumoconiosis. If, however, a nonpulmonary or nonrespiratory condition or disease causes a chronic respiratory or pulmonary impairment, that condition or disease shall be considered in determining whether the miner is or was totally disabled due to pneumoconiosis.

(b)(1) Total disability defined. A miner shall be considered totally disabled if the irrebuttable presumption described in § 718.304 applies. If that presumption does not apply, a miner shall be considered totally disabled if the miner has a pulmonary or respiratory impairment which, standing alone, prevents or prevented the miner:

> (i) From performing his or her usual coal mine work; and

> (ii) From engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity over a substantial period of time.

(2) Medical criteria. In the absence of contrary probative evidence, evidence which meets the standards of either paragraphs (b)(2)(i), (ii), (iii), or (iv) of this section shall establish a miner's total disability:

> (i) Pulmonary function tests showing values equal to or less than those listed in Table B1 (Males) or Table B2 (Females) in Appendix B to this part for an individual of the miner's age, sex, and height for the $FEV_1$ test; if, in addition, such tests also reveal the values specified in either paragraph (b)(2)(i)(A) or (B) or (C) of this section:

47

(A) Values equal to or less than those listed in Table B3 (Males) or Table B4 (Females) in Appendix B of this part, for an individual of the miner's age, sex, and height for the FVC test, or

(B) Values equal to or less than those listed in Table B5 (Males) or Table B6 (Females) in Appendix B to this part, for an individual of the miner's age, sex, and height for the MVV test, or

(C) A percentage of 55 or less when the results of the $FEV_1$ test are divided by the results of the FVC test ($FEV_1$/FVC equal to or less than 55%), or

(ii) Arterial blood-gas tests show the values listed in Appendix C to this part, or

(iii) The miner has pneumoconiosis and has been shown by the medical evidence to be suffering from cor pulmonale with right-sided congestive heart failure, or

(iv) Where total disability cannot be shown under paragraphs (b)(2)(i), (ii), or (iii) of this section, or where pulmonary function tests and/or blood gas studies are medically contraindicated, total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment as described in paragraph (b)(1) of this section.

(c)(1) Total disability due to pneumoconiosis defined. A miner shall be considered totally disabled due to pneumoconiosis if pneumoconiosis, as defined in § 718.201, is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment. Pneumoconiosis is a "substantially contributing cause" of the miner's disability if it:

(i) Has a material adverse effect on the miner's respiratory or pulmonary condition; or

(ii) Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment.

(2) Except as provided in § 718.305 and paragraph (b)(2)(iii) of this section, proof that the miner suffers or suffered from a totally disabling respiratory or pulmonary impairment as defined in paragraphs (b)(2)(i), (b)(2)(ii), (b)(2)(iv) and (d) of this section shall not, by itself, be sufficient to establish that the miner's impairment is or was due to pneumoconiosis. Except as provided in paragraph (d), the cause or causes of a miner's total disability shall be established by means of a physician's documented and reasoned medical report.

(d) Lay evidence. In establishing total disability, lay evidence may be used in the following cases:

(1) In a case involving a deceased miner in which the claim was filed prior to January 1, 1982, affidavits (or equivalent sworn testimony) from persons knowledgeable of the miner's physical condition shall be sufficient to establish total (or under § 718.306 partial) disability due to pneumoconiosis if no medical or other relevant evidence exists which addresses the miner's pulmonary or respiratory condition.

(2) In a case involving a survivor's claim filed on or after January 1, 1982, but prior to June 30, 1982, which is subject to § 718.306, affidavits (or equivalent sworn testimony) from persons knowledgeable of the miner's physical condition shall be sufficient to establish total or partial disability due to pneumoconiosis if no medical or other relevant evidence exists which addresses the miner's pulmonary or respiratory condition; however, such a determination shall not be based solely upon the affidavits or testimony of the claimant and/or his or her dependents who would be eligible for augmentation of the claimant's benefits if the claim were approved.

(3) In a case involving a deceased miner whose claim was filed on or after January 1, 1982, affidavits (or equivalent sworn testimony) from persons knowledgeable of the miner's physical condition shall be sufficient to establish total disability due to pneumoconiosis if no medical or other relevant evidence exists which addresses the miner's pulmonary or respiratory condition; however, such a determination shall not be based

solely upon the affidavits or testimony of any person who would be eligible for benefits (including augmented benefits) if the claim were approved.

(4) Statements made before death by a deceased miner about his or her physical condition are relevant and shall be considered in making a determination as to whether the miner was totally disabled at the time of death.

(5) In the case of a living miner's claim, a finding of total disability due to pneumoconiosis shall not be made solely on the miner's statements or testimony.

(e) In determining total disability to perform usual coal mine work, the following shall apply in evaluating the miner's employment activities:

(1) In the case of a deceased miner, employment in a mine at the time of death shall not be conclusive evidence that the miner was not totally disabled. To disprove total disability, it must be shown that at the time the miner died, there were no changed circumstances of employment indicative of his or her reduced ability to perform his or her usual coal mine work.

(2) In the case of a living miner, proof of current employment in a coal mine shall not be conclusive evidence that the miner is not totally disabled unless it can be shown that there are no changed circumstances of employment indicative of his or her reduced ability to perform his or her usual coal mine work.

(3) Changed circumstances of employment indicative of a miner's reduced ability to perform his or her usual coal mine work may include but are not limited to:

(i) The miner's reduced ability to perform his or her customary duties without help; or

(ii) The miner's reduced ability to perform his or her customary duties at his or her usual levels of rapidity, continuity or efficiency; or

(iii) The miner's transfer by request or assignment to less vigorous duties or to duties in a less dusty part of the mine.

50

## IX.    CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitations,
Typeface Requirements, and Type-Style Requirements

No.14-2157    Caption:  <u>West Virginia CWP Fund v. Kenneth Gregory</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

> this brief contains **8,560** words, excluding the parts of the brief
> exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportionally spaced typeface using
> Microsoft Word  2010 Version in Times New Roman 14 point font.

<u>/s/ Jeffrey R. Soukup</u>
*Counsel for West Virginia CWP Fund*

Dated: December 15, 2014

## X.    CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the **Opening Brief of**

**Petitioner, West Virginia CWP Fund,** was served upon the following by

electronic delivery and UPS Ground this **15th** day of December, 2014.

**ELECTRONIC &**          Patricia S. Connor, Clerk of Court
**OVERNIGHT:**            United States Court of Appeals for the Fourth Circuit
                         Lewis F. Powell, Jr. United States Courthouse Annex
                         1100 E. Main Street, Suite 501
                         Richmond, VA  23219-3517


**ELECTRONIC:**           James D. Holliday, Esq.
                         Holliday & Lewis
                         109 Broadway, Ste. 301
                         P. O. Box 29
                         Hazard, KY  41702-0029
                         glomawr@aol.com

                         Gary K. Stearman, Esq.
                         MacKenzie Fillow, Esq.
                         U. S. Department of Labor
                         Office of the Solicitor
                         200 Constitution Avenue, N.W., Suite N-2117
                         Washington, DC  20210
                         blls-sol@dol.gov


                              /s/ Jeffrey R. Soukup
                              *Counsel for West Virginia CWP Fund*